**Jeffrey MAYS, Petitioner**

v.

**M. KOSINSKI; R. Kessler; M. Harlow, D. Varner et al., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 3, 2014.
Decided Feb. 27, 2014.

Jeffrey Mays, pro se.

Vincent R. Mazeski, Assistant Counsel, Mechanicsburg, for respondents.

BEFORE: LEADBETTER, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Before this court in our original jurisdiction are the preliminary objections in the nature of a demurrer filed by the Department of Corrections (DOC)[1] to the petition for review filed, *pro se*, by Jeffrey Mays seeking mandamus relief. Mays asks this court to order DOC to change his housing classification. We sustain DOC's preliminary objections and dismiss Mays' petition.

Mays is currently incarcerated at the State Correctional Institution at Albion (SCI–Albion). In his petition for review, Mays claims that on February 4, 2013, he sent a letter to Rebecca Kessler, the major at SCI–Albion, complaining of harassment by Melanie Kosinski, the manager of his housing unit. (Pet. for Rev., ¶ 1.) Thereafter, Mays alleges that Kosinski arbitrarily raised his custody level from 3 to 4 and transferred Mays to a new, more-restrictive housing unit on March 20, 2013.[2] (*Id.*, ¶¶ 3, 4.)

On March 26, 2013, Mays filed an administrative complaint in the prison grievance system, alleging that Kosinski increased his custody level in retaliation for his grievance letter. (*Id.*, ¶ 6.) On April 8, 2013, Kessler denied his grievance.[3] (*Id.*, ¶¶ 6–7.) On April 13, 2013, Mays appealed that review to Michael Harlow, the superintendent at SCI–Albion, who upheld the response.[4] (*Id.*, ¶ 8.) On May 7, 2013,

1. DOC filed preliminary objections on behalf of respondents: Melanie Kosinski (Unit Manager at the State Correctional Institution at Albion (SCI–Albion)), Rebecca Kessler (Major at SCI–Albion), Michael Harlow (Superintendent at SCI–Albion), and Darien Varner (Chief Grievance Officer). When Mays filed his original petition for review, he included DOC in the caption. In his amended petition for review, Mays erroneously named the individual DOC employees in the caption and omitted DOC. We recognize, however, that DOC is a proper party to this litigation.

2. DOC Policy 11.2.1 provides that "each inmate committed to the custody of [DOC] is classified via the Pennsylvania Additive Classification Tool (PACT) and assigned a corresponding Custody Level." (DOC Policy 11.2.1, § III.)

3. Kessler's response stated in its entirety:
 Mr. Mays, you are a custody level 4 with program codes Y, H, and Z. Your last reclassification was April of 2012. J unit by its physical structure is and always has been a security level 4 housing unit. You are therefore appropriately housed on this unit. Inmates on J unit are bound to follow all DOC and local policy and procedures-just as any other inmate at [SCI–Albion].

You were moved to J unit due to your custody level and program codes.
(Initial Review Response, 4/8/13, at 1.)

4. Harlow's appeal response stated in its entirety:

Inmate Mays submitted an appeal to the Facility Manager claiming the issues in his initial grievance were not fully addressed. He claims his annual review would have been held in April 2013 and not before. He also claims the Grievance Officer stated his level was raised in April 2012, but was advised by staff it did not occur until on or about 2/26/13. He goes on to say that after he made a complaint about [Kosinski] that he was suddenly moved to J unit and found out his custody level changed and he believes this was done out of retaliation and harassment.
The Facility Manager reviewed the appeal and corresponding documentation. Inmate Mays has not presented the Facility Manager with any evidence to support his claim of retaliation and harassment. A reclassification can occur at times other than at annual review. This occurs at the discretion of the Unit Management staff based on a variety of factors. Housing assignments are han-

Mays appealed to Darien Varner, the chief grievance officer, who issued a final decision upholding both responses.[5] (*Id.*, ¶¶ 9–10.)

Having exhausted his administrative remedies, Mays filed a petition for review in this court's original jurisdiction on July 10, 2013. On July 29, 2013, Mays filed an application to amend his petition for review, which this court granted on September 9, 2013. Mays asserts that DOC retaliated against him for lodging his complaint. Mays requests an order directing DOC to reinstate his original custody level and return him to a level 3 housing unit.

■ DOC filed preliminary objections in the nature of a demurrer, arguing that Mays' petition seeking mandamus should be rejected because he failed to establish a clear legal right to the relief he seeks.[6] We agree.

Pa. R.C.P. No. 1028(a)(4) states:

> dled by the Unit Managers and occur based on the needs of the institution.
> The Facility Manager upholds the initial review response.
> (Appeal Response, 4/29/13, at 1.)

**5.** Varner's decision stated in its entirety:

> You state that on 3/20/13, your status level was changed to 4 and you were placed on J[ ] unit which is categorized as a level 4 housing unit. You claim that inmates on this unit are treated less favorably than other general population inmates. You say that the staffing was inappropriately conducted and that you have not had any negative activity or adjustment issues that should exclude you from an Incentive Based Transfer. You claim that [Kosinski] targets you with harassment tactics and creates difficulties for you. You say that your custody status change was motivated by the retaliation and harassment of [Kosinski].
> A review of the record finds that your custody level was changed to 4 on 3/20/13 and at

(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

. . .

■ (4) legal insufficiency of a pleading (demurrer).

A writ of mandamus is an extraordinary remedy. *Taglienti v. Department of Corrections*, 806 A.2d 988, 991 (Pa.Cmwlth. 2002). "This [c]ourt may only issue a writ of mandamus where the petitioner possesses a clear legal right to enforce the performance of a ministerial act or mandatory duty, the defendant possesses a corresponding duty to perform the act, and the petitioner possesses no other adequate or appropriate remedy." *Detar v. Beard*, 898 A.2d 26, 29 (Pa.Cmwlth.2006).

■ First, Mays argues that DOC violated the First Amendment to the United States Constitution[7] by retaliating against him for his grievance letter. A prison retaliation claim requires proof that "the inmate engaged in constitutionally protected conduct, prison officials took adverse

> that time, you were moved to J[ ] unit. The assignment of an inmate to a unit is contingent upon his/her programming and/or custody needs and as noted in the record, you are correctly housed. You offer no evidence of retaliation or harassment by [Kosinski] or that she has created difficulties for you. This office upholds the decisions of the Grievance Officer and Facility Manager in denying your grievance and requested relief.
> (Final Appeal Decision, 6/4/13, at 1.)

**6.** In ruling on preliminary objections in the nature of a demurrer, this court must accept as true all well-pled material facts and all inferences reasonably deducible therefrom. *Barndt v. Department of Corrections*, 902 A.2d 589, 592 (Pa.Cmwlth.2006).

**7.** The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.

action, and the protected conduct was a substantial or motivating factor for the action." *Yount v. Department of Corrections*, 600 Pa. 418, 426, 966 A.2d 1115, 1120 (2009); *see also Richardson v. Wetzel*, 74 A.3d 353, 357 (Pa.Cmwlth.2013) (applying *Yount* test and finding no factual averments in the complaint demonstrating retaliatory conduct by prison officials). "[A]dministrative prisoner transfers are presumed to further a legitimate penological objective." *Yount*, 600 Pa. at 428, 966 A.2d at 1121.

Here, even accepting as true all well-pled material facts, the change of Mays' custody level and his subsequent transfer cannot be considered adverse actions for the purpose of a prison retaliation claim. *See* 37 Pa.Code § 93.11(a) ("An inmate does not have a right to be housed in a particular facility or in a particular area within a facility."); *see also Fortune v. Wetzel*, 2013 WL 3270885 (Pa.Cmwlth., No. 644 M.D.2012, filed June 27, 2013), slip op. at 9 (holding that an inmate has no right to a particular custody level), *aff'd* (Pa. No., 19 WAP 2013, filed January 21, 2014). Thus, Mays has not demonstrated a clear legal right to the remedies he seeks on the basis of a retaliation claim.

 Mays also asserts that DOC violated the Fourteenth Amendment to the United States Constitution[8] by singling him out "absent a reasonable rationale." (Pet., ¶ 17.) "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wil-*

*kinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). For an inmate, a liberty interest in avoiding particular conditions of confinement may arise from state action. *Id.* at 221, 125 S.Ct. 2384 ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.' "). However, such a liberty interest arises only when the restrictive condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Mays has not shown an atypical and significant hardship resulting from his changed custody level and subsequent transfer. Therefore, he has not demonstrated a liberty interest warranting Due Process protection. *See Oden v. Caison*, 892 F.Supp. 111, 111 (E.D.Pa.1995) ("Plaintiff does not have a right under the U.S. Constitution or Pennsylvania state laws or regulations to any specific custody status.").

That is not to say that DOC's responses to Mays' administrative grievances have been satisfactory or that Mays is left without further recourse. It is noteworthy that Mays had no disciplinary infractions, arguments with staff, or any other misbehavior warranting the changes, and DOC's inadequate responses to Mays' complaints have cast no light on a legitimate reason for the change in custody level.[9] The responses have not addressed the heart of Mays' grievances, i.e., why was his custody level changed when he did not behave

---

8. The Fourteenth Amendment provides in part that "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

9. It is of little use to an inmate to receive a response of "Your custody level is X" to a query asking "Why was my custody level changed?"

inappropriately?[10]

In so doing, DOC has failed to adhere to its own policies. DC–ADM 804 notes that the Initial Review Response "shall include a brief rationale, summarizing the conclusion and any action taken." DC–ADM 804 at 1–4. The Facility Manager's Appeal Response shall include "[a] brief statement of the reason(s) for the decision." *Id.* at 2–2. The Final Appeal Decision "shall notify the inmate ... of the decision and rationale." *Id.* at 2–6.

Nonetheless, this failure does not entitle Mays to a finding that DOC's action was in retaliation for his grievance. Accordingly, because Mays has not proven a clear, legal right to his previous custody level, which is required for him to prevail in his mandamus action, we sustain DOC's preliminary objections and dismiss Mays' petition.

### ORDER

AND NOW, this *27th* day of *February,* 2014, we hereby sustain the preliminary objections in the nature of a demurrer filed by the Department of Corrections and dismiss the petition for review filed by Jeffrey Mays.

---

10. A change from custody level 3 to custody level 4 results in restricted freedom of movement and can result in the loss of numerous privileges, including telephone access, job advancement, and visiting rights.